# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PETROPLEX INTERNATIONAL, LLC**                    **CIVIL ACTION**

**VERSUS**                                          **NO. 15-140**

**ST. JAMES PARISH**                                **SECTION "H"(4)**

## ORDER AND REASONS

Before the Court is Defendants' Motion to Dismiss All Claims Against Individually Named Defendants (Doc. 14). For the following reasons the Motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

Plaintiffs, Mainline Energy Partners No. 2, LLC ("Mainline") and Homeplace Ventures No.2, LLC ("Homeplace") own adjoining tracts of land fronting the west bank of the Mississippi River in St. James Parish (the

---

[1] At this stage of the case, background facts must be drawn from the Plaintiffs' Complaint. *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

"Petroplex Property").   The property was leased to Plaintiff Petroplex International, LLC ("Petroplex").[2]  The land was purchased in 2007 for the sole purpose of building a 1,780 acre petroleum tank farm.  In 2008, Plaintiffs began the process of acquiring necessary state and federal permits.  Throughout this process, various state, parish and local officials "promoted and encouraged" the industrial development of this property.  Simultaneously, the South Central Planning & Development Commission, the Parish Planning Commission, and the Parish Council worked to develop and implement a comprehensive land use plan for the Parish.

In 2012, Plaintiffs completed the engineering and design work.

In early 2013, St. James Parish President Timothy Roussel ("Roussel") provided a letter to Petroplex confirming that there were, at the time, no Zoning or other Land Use restrictions in place on the Petroplex Property.  The letter further advised that there was a "Comprehensive Land Use Plan document" but that it was in "draft form" and had not been adopted.  The letter concluded with the representation that Roussel's "office supports the addition of Petroplex as one of our Industrial family members."

In April 2014, as Plaintiffs were nearing the end of the planning process, the Parish Council adopted Ordinance14-03, a Master Land Use Plan for the Parish (the "Land Use Plan").   Under  the Land Use Plan, the tank farm was not a permissible use of the Petroplex Property.

In May 2014, recognizing that Petroplex had a reasonable and protected

---

[2] Mainline and Homeplace are the sole members of Petroplex.

2

commercial expectation in pursuing the project, the Parish Council adopted Resolution 14-84, ("the Resolution") permitting Plaintiffs to construct the facility, subject to compliance with certain conditions.  The Resolution required, among other things, that Plaintiffs begin construction on the facility no later than July 31, 2014.  Plaintiffs allege that they began construction prior to July 31, 2014, as required in the Resolution.

Shortly before the Parish Council meeting on November 5, 2014, the Parish requested that Petroplex provide an update on the project at the meeting. The requested update was not an agenda item.  Representatives of project investors made the presentation to the Council.  At the conclusion of the presentation, Victor Franckiewicz ("Franckiewicz"), the parish attorney, advised that, in his opinion, Petroplex was not in compliance with the Resolution for various reasons.  He further opined that Petroplex was required to obtain a building permit from the Parish to commence and continue construction. Despite this advice, the Parish Council urged Petroplex to continue the work and accelerate the construction.

On December 1, 2014, Petroplex's counsel was advised via email by Franckiewicz that the Parish intended to issue a Stop Work Order ("SWO") because Petroplex was purportedly in violation of the Resolution.  Franckiewicz advised that he would be available to meet with Petroplex representatives to discuss the matter and that Petroplex should provide factual material that addressed the terms of the Resolution.  Various emails were exchanged requesting and setting meetings to discuss the SWO prior to its issuance.

Shortly before noon on December 3, 2014, Petroplex sent correspondence to Franckiewicz, Roussel and the Parish Director of Operations asserting that Petroplex was in compliance with the Resolution and requesting a meeting to provide additional information and factual support confirming compliance. The correspondence further requested that no decision regarding the SWO be made until Petroplex had an opportunity to present additional information to Parish officials. Petroplex was advised that Parish officials agreed to meet on December 4, 2014 at 1:00 pm to discuss the situation.

On December 4, 2014, at 9:00 a.m., Petroplex was advised that the Parish had issued a "Notice of Violation and Stop Work Order." The SWO was issued at Roussel's direction and signed by Defendant Ryan Donadieu, Parish Planning/Permitting Supervisor . No meeting was held prior to the its issuance. Later that same day, Petroplex met with Parish representatives and requested (1) a hearing before the Parish Council regarding the SWO; and (2) a resolution authorizing Petroplex to proceed with construction and operation of the facility. Petroplex requested that these items be placed on the Council agenda for its next regular meeting. On December 8, 2014, the Parish advised Petroplex that it would not withdraw the SWO. The request for post-stop work order hearing was denied.

On December 31, 2014, in a letter addressed to Roussel and Charles Ketchen, parish council president, Petroplex again asked for a hearing before the parish council and a resolution authorizing Petroplex to proceed. Petroplex requested that this request be placed on the parish council agenda for their

4

regular meeting in January.  This request was again denied.  Petroplex was allowed, however, to make a presentation before the Council on January 7, 2015.[3]  No questions were asked at the meeting and no action was taken.

After attempts to resolve the issue failed, this suit was filed.  Plaintiffs filed this declaratory judgment action alleging that the Land Use Plan and the Resolution are unconstitutional in several respects and that the Parish's actions constitute an unconstitutional taking.  Plaintiffs also ask for damages pursuant to 42 U.S.C. § 1983 and assert state law claims for detrimental reliance.  Furthermore, Plaintiffs have asserted § 1983 claims against the following officials in their official and personal capacities (collectively, the "Individual Defendants"): Parish President Timothy Roussel; Parish Planning/Permitting Supervisor Ryan Donadieu; and Parish Council Members Alvin St. Pierre, Jason Amato, Terry McCreary, Ralph Patin, Charles Ketchens, Ken Brass, and James Brazen.  This motion seeks dismissal of the claims against the Individual Defendants.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[4]  A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable

---

[3] Though the pleadings indicate that the Council presentation was in 2014, the Court notes that this is an obvious typographical error.

[4] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

inference that the defendant is liable for the misconduct alleged."[5]  A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[6]  The court need not, however, accept as true legal conclusions couched as factual allegations.[7]  To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[8]  The complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.[9]  If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[10]  The standard for determining a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss.[11]

## LAW AND ANALYSIS

This Motion seeks dismissal of discrete portions of Plaintiffs' claims against individually named defendants (the "Individual Defendants") based on immunity defenses. It raises four distinct yet interrelated issues.   First, Defendants argue that the St. James Parish Council Members,[12] who have been

---

[5] *Id.*

[6] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

[7] *Iqbal*, 556 U.S. at 678.

[8] *Id.*

[9] *Lormand*, 565 F.3d at 255–57.

[10] *Jones v. Bock,* 549 U.S. 199, 215 (2007).

[11] *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

[12] Parish Council members are Alvin St. Pierre, Jason Amato, Terry McCreary, Ralph Patin, Charles Ketchens, Ken Brass, and James Brazen.

sued both in their official and personal capacities, are entitled to absolute legislative immunity from suit in their personal capacities for their actions in enacting the Land Use Plan and the Resolution, and for their failure to hold a hearing after the Parish issued the SWO.  Second, Defendants argue that Parish President Timothy Roussel and Planning/Permitting Supervisor Ryan Donadieu, who have likewise been sued in their personal and official capacities, are entitled to qualified immunity from suit in their personal capacities for issuing the SWO. Third, Defendants argue that the official capacity suits against the Individual Defendants should be dismissed as redundant of the claims against the Parish itself.  Finally, Defendants ask the Court to apply the aforementioned doctrines of immunity to any of Plaintiffs' potential state law claims. The Court will address each of these issues in turn.

### I. Absolute Legislative Immunity: The Council Members

Plaintiffs have asserted § 1983 claims against the St. James Parish Council members in their individual capacities.[13]  These claims allege violations of Plaintiffs' procedural due process rights arising out of the enactment of the Land Use Plan, the Resolution, and the failure to grant a hearing before or after the issuance of the SWO.  In this Motion, the Council Members  ask the Court to dismiss the personal capacity claims against them based on absolute legislative immunity.  Plaintiffs respond, arguing that the actions of the Council are not legislative in nature, and therefore absolute immunity should not apply.

Absolute legislative immunity protects an individual from suit in his

---

[13] These claims are brought against Alvin St. Pierre, Jason Amato, Terry McCreary, Ralph Patin, Charles Ketchens, Ken Brass, and James Brazen.

personal capacity for actions that are legislative in nature.[14]  This immunity has been extended to include local legislators and other individuals acting in legislative capacities.[15]  "Absolute immunity applies to activities, not offices . . . .  Legislative immunity protects officials fulfilling legislative functions even if they are not 'legislators.'  And absolute immunity only protects those duties that are functionally legislative, not all activities engaged in by a legislator."[16]  The key question here therefore is whether or not the actions taken by the St. James Parish Council were "legislative" in nature.

Though the Fifth Circuit has declined to adopt a definitive test to determine if an action is legislative, it has considered the tests from other circuits in determining the nature of an official's action.[17]   Relevant considerations include whether the decision made involves formulation of a policy or ad hoc decision-making,[18] whether the decision involves prospective, legislative-type rules or  executive-type enforcement,[19] and whether the facts underlying the decision are legislative facts (such as generalizations concerning a policy or the state of affairs) or facts that relate to particular individuals or situations (making the decision administrative).[20]

---

[14]*Hughes v. Tarrant County Tex.*, 948 F.2d 918, 920 (5th Cir. 1991).

[15]*Id.*

[16] *Bryan v. City of Madison*, 213 F.3d 267, 272 (5th Cir. 2000) (internal citations omitted).

[17] *Hughes,* 948 F.2d at 921.

[18] *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 580 (9th Cir. 1984).

[19] *Scott v. Greenville County*, 716 F.2d 1409 (4th Cir. 1983).

[20] *Citting v. Muzzey,* 724 F.2d 259 (1st Cir. 1984).

In applying these guidelines, the courts have consistently held that zoning actions by legislative bodies are legislative, even where they affect only one piece of property.  Two cases, *Calhoun v. St. Bernard Parish* and *Bryan v. City of Madison* are especially illustrative.  In *Calhoun*, the plaintiff brought a § 1983 action following his unsuccessful attempts to persuade the St. Bernard Parish Police Jury to allow him to develop an apartment complex.[21]  There, the parish enacted a series of building moratoria and delayed issuing a permit for construction.[22]  When the parish finally did issue a permit, it limited the use of the housing to the elderly.[23]  The court held that these actions were legislative in character, giving the members of the police jury absolute immunity from suit in their personal capacity.[24]  The court emphasized that even "spot zoning" provisions that affect only one piece of property are generally legislative in character, as they are part of an overall zoning plan.[25]

Similarly, in *Bryan*, the Fifth Circuit found that zoning decisions by a legislative body were legislative in character.[26]  There, the plaintiff brought a § 1983 action alleging that the defendants prevented him from obtaining a building permit until after his contract to purchase the land at issue had

---

[21] *Calhoun v. St. Bernard Parish*, 937 F.2d 172, 173 (5th Cir. 1991).

[22] *Id.*

[23] *Id.*

[24] *Id.* at 174.

[25] *Id.* (citing *Shelton v. City of College Station*, 780 F.2d 475 (5th Cir. 1986) (holding that the denial of a request for a variance from a zoning ordinance was a legislative decision).

[26] 213 F.3d at 274.

expired.[27]   The plaintiff challenged several sets of actions on the part of city officials, including events at a board meeting where the mayor and two alderman voted to rezone the property.[28]   The court held that this action—voting to rezone the particular piece of property—was legislative, giving the officials absolute immunity.[29]   The court noted that the acts were legislative "because they involved a rezoning provision."[30]

This Court finds that the St. James Parish Council members are entitled to legislative immunity for their actions with regard to the use of the Petroplex Property.  The Land Use Plan, a forward-looking plan for future land use in the Parish, is legislative in nature as it involves policy considerations with long-range consequence. The Resolution, a land-use decision affecting a particular piece of property, is likewise legislative in character as an amendment to the overall plan.

The fact that Plaintiffs did not obtain relief from the Parish Council either before or after the issuance of the SWO has no bearing on the issue of absolute immunity.  Any action the council could have taken would have necessarily been as a body, presumably in the form of new Resolution lifting the SWO.  The decision to pass or not to pass such a resolution involves action of the legislature as a body and thus is legislative in character.  Though there may ultimately be other constitutional issues with the actions of the council as a whole, the council

---

[27] *Id.* at 272.

[28] *Id.* at 274.

[29] *Id.*

[30] *Id.*

members' actions did not step outside the bounds of legislative activity; therefore, they are absolutely immune from suit in their personal capacities. All claims against the Parish Council Members in their individual capacities are therefore dismissed.

## II. Qualified Immunity: Roussel and Donadieu

Plaintiffs have asserted personal capacity § 1983 claims against Defendants Timothy Roussel and Ryan Donadieu for their actions in issuing the SWO. Roussel and Donadieu assert that qualified immunity applies to shield them from suit for the issuance of the SWO without a hearing either before of after the order's issuance. Qualified immunity serves to "shield[] government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."[31] "Once a defendant raises the defense of qualified immunity, 'the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'"[32]

In *Saucier v. Katz*, the Supreme Court promulgated a two-step analysis to determine if an official has stepped outside the bounds of qualified immunity.[33] Under that test, the initial inquiry is whether the Plaintiff has alleged a constitutional violation.[34] If established, the next inquiry is whether the

---

[31] *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).

[32] *Harris v. Serpas*, 745 f.3d 767 (5th Cir. 2014) (quoting *Brumfield v. Hollins,* 551 F.3d 322, 326 (5th Cir. 2008).

[33] 533 U.S. 194, 201 (2001).

[34] *Id.*

defendant's conduct was objectively reasonable in light of clearly established law at the time the conduct occurred.[35]  In *Pearson v. Callahan,* the Court retreated somewhat from this rigid two-step inquiry, giving courts leave to decide which prong to consider first.[36]

## A. Allegation of a Constitutional Violation

Plaintiff's complaint alleges violations of Plaintiff's procedural due process rights arising out the issuance of the SWO without hearing.  To allege a violation of procedural due process, Plaintiff must show the deprivation of a protected property interest by a person acting under the color of state law without hearing or meaningful opportunity to be heard.[37]

The parties do not contest that Roussel or Donadieu were acting under color of state law during the relevant events.  Defendants, however, assert that Plaintiffs lacked the requisite constitutionally protected property interest necessary to support a procedural due process claim, and advance two arguments in support of their position.  First, they argue that the Resolution never conferred a "legitimate claim of entitlement" to develop the property at issue.  Alternatively, Defendants argue that, to the extent that a property right did exist, it terminated by operation of law due to Plaintiffs' alleged noncompliance with the terms of the Resolution.  The Court will address each of these arguments in turn.

### 1. Existence of the Property Right

---

[35] *Id.*

[36] 555 U.S. 223, 236 (2008).

[37] *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976).

12

Defendants assert that Plaintiffs have not alleged a constitutional violation because Petroplex did not have a constitutionally protected property interest.  Defendants argue that the Resolution did not grant Petroplex, a lessee, with a "legitimate claim of entitlement" to build a petroleum farm.  As a result, Defendants argue that Plaintiffs could have no constitutionally protected property interest.

For an interest to qualify as a protected property interest, an individual must have a legitimate claim of entitlement to it.[38]  In this Circuit, "[p]rivileges, licences, certificates and franchises qualify as property interests for purposes of procedural due process."[39]  "[O]nce issued, a license or permit cannot be taken away by the State without due process."[40] The Resolution gave Petroplex the right to develop the property, subject to certain limited conditions.  As a result, Plaintiff invested significant time and resources into the development of the property.  Plaintiffs allege that the Resolution was sufficient to confer the right to develop the property, and that they were in compliance with its terms.  Indeed, on the face of the Resolution, the Plaintiffs are authorised to proceed with the development of the property, subject to the conditions contained therein.  The Resolution constitutes a permit in this respect.  Plaintiffs have, therefore, alleged a constitutionally protected property right.

---

[38] *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

[39] *Bowlby v. City of Aberdeen*, 681 F.3d 215, 220 (5th Cir. 2012) (internal citations omitted) (holding that an individual had a constitutionally protected property interest in business operation permits).  *See also Jabary v. City of Madison*, 547 Fed. Appx. 600, 609 (5th Cir. 2013) (holding that an individual had a constitutionally protected property interest in a certificate of occupancy).

[40]  *Bowlby*, 681 F.3d at 220.

## 2. Termination of Property Right

Defendants offer as an alternative that any right Petroplex had in development of the property had terminated.   Defendants argue that the Resolution granted Petroplex a conditional right to develop the property, and that because Plaintiffs were not in compliance with the provisions of the Resolution any property interest in development terminated by operation of law. This argument ignores the status of the pleadings.   On a Rule 12(b)(6) motion, the Court must accept the factual allegations of Plaintiffs' complaint as true. Plaintiffs allege that Defendants issued the SWO despite full compliance with its terms.  Defendants argument rests on the conclusion that Petroplex failed to comply with the terms of the Resolution.   They aver that plaintiffs have failed to make a 'particularized showing' that they were in compliance with the Resolution terms.    This argument begs the question: when was the particularized showing supposed to be made?  Per the terms of the Resolution, approval only terminated on certain conditions—conditions that Plaintiffs allege they fulfilled.[41]  The Parish was without unfettered discretion to terminate the approval.  Plaintiffs, therefore, had a constitutionally protected property interest in the Resolution.

According to Plaintiffs' complaint, Plaintiffs expended substantial resources in development of the property in reliance on the Resolution.   Roussel and Donadieu issued the SWO despite Plaintiffs' repeated request for a meeting

---

[41] *See 3883 Connecticut LLC v. District of Columbia*, 336 F.3d 1068, 1072 (D.C. Cir. 2003) (holding that a holder of a permit has a property right where official's discretion to terminate or suspend work already allowed by the permit is substantially limited).

prior to its issuance and repeatedly denied a post-SWO hearing. Finally, Plaintiffs contend that they were at all times in compliance with the Resolution, which served as a valid work permit. As a result, Plaintiffs allege that Roussel and Donadieu violated their "constitutionally protected property rights" by prohibiting work on the property without a hearing or a meaningful opportunity to be heard.

It is well established "that some form of hearing is required before an individual is finally deprived of a property interest."[42] Indeed, "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"[43] The Court finds that Plaintiffs have adequately pled a constitutional violation by Roussel and Donadieu—namely, a violation of procedural due process. The first prong of the *Saucier* test is therefore satisfied.

### B. "Clearly Established" Constitutional Right

Defendants argue that, even if Plaintiffs have pled a constitutional violation, such violation does not run afoul of clearly established constitutional rights. The Fifth Circuit, citing applicable Supreme Court precedent, has stated:

> To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " In practice, this means that "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the 'objective legal

---

[42] *Matthews,* 424 U.S. at 333.

[43] *Loudermill*, 470 U.S. at 542.

reasonableness' of the official's action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." This court has repeatedly held that objective reasonableness in a qualified immunity context is a question of law for the court to decide, not an issue of fact. For a plaintiff to establish objective unreasonableness and overcome a qualified immunity defense, he must satisfy two inquiries. First, a plaintiff must show "the allegedly violated constitutional rights were clearly established" at the time of the alleged violation. Second, a plaintiff must demonstrate that "the conduct of the defendants was objectively unreasonable in the light of that then clearly established law."[44]

Actions of administrative officials are protected by qualified immunity unless the right at issue is defined by "controlling authority" or a "robust consensus of persuasive authority."[45]

Plaintiff alleges a violation of the protections of procedural due process protections of the Fifth and Fourteenth Amendments.  Plaintiffs allege in their Complaint that they were unjustly deprived of their property interest in developing the property without a meaningful opportunity to be heard either before or after the issuance of the SWO,  despite their compliance with the terms of the Resolution.  The Supreme Court has consistently held "that some form of hearing is required before an individual is finally deprived of a property interest."[46] Moreover, the principle that permits, licenses, and franchises qualify as protected property interests has been recognized in the Fifth Circuit for

---

[44] *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (internal citations omitted).

[45] *Morgan v. Swanson*, 656 F.3d 359, 382 (5th Cir. 2011).

[46] *Matthews*, 424 U.S. at 333.

decades.[47]  Finally, there is a "robust consensus of persuasive authority" defining this procedural due process right.  Courts nationwide have repeatedly held that land use permits, such as the one at issue here, are cognizable property interests, and that the issuance of a SWO triggers procedural due process protections.[48]

The Court is further persuaded by *Jabary v. City of Allen*, an unpublished Fifth Circuit decision.  There, the court held that the necessity for notice and a hearing prior to the deprivation of the property right in a certificate of occupancy was a clearly established constitutional right and that defendants were therefore not entitled to the protection of qualified immunity.[49]

At oral argument, Defendant emphasized the conditional nature of the Resolution in distinguishing *Jabary*.  This argument is not persuasive due to the current procedural posture of the case.  To be sure, Plaintiffs dispute this

---

[47] *Wells Fargo Armored Serv. Corp. v. Georgia Pub. Serv. Comm'n,* 547 F.2d 938, 941 (5th Cir. 1977)(citing *Bell v. Burson,* 402 U.S. 535 (1971)).

[48] *3883 Connecticut, LLC v. District of Columbia*, 336 F.3d 1068, 1074 (D.C. Cir. 2003) (holding that SWO triggered procedural due process protections, as builder had property interest in conditional preliminary building permits due to the limited conditions which would allow the District to terminate the permit); *Tri-Corp Management Co. v. Praznik,* 33 Fed. Appx. 742, 747 (6th Cir. 2002) (noting that developer had property interest in previously issued zoning permit); *Weinburg v. Whatcom County*, 241 F.3d 746, 753 (9th Cir. 2001) (holding that a developer had a cognizable property interest in validly approved permits and short plats, and that their summary revocation triggered procedural due process protections.); *Buckeye Community Hope Foundation v. City of Cuyahoga Falls*, 263 F.3d 627, 642 (6th Cir. 2001) (holding that plaintiffs had property interest in permit based on approved site plan, triggering due process protections) (reversed on other grounds);  *Hearns Concrete Const. Co. v. City of Ypsilanti*, 241 F. Supp. 2d 803, 812 (E.D. Mich. 2003) (holding that developer had property interest in validly approved permits).

[49] 547 Fed. Appx. 600, 609 (5th Cir. 2013).

finding, alleging in their Complaint that they began construction as required. The summary issuance of a stop work order without the opportunity to be heard, despite Plaintiffs' purported compliance with the conditions of the Resolution, is not objectively reasonable in light of Supreme Court and Fifth Circuit precedent.   This conclusion is supported by consistent Supreme Court jurisprudence outlining the protections of procedural due process.   Like in *Jabary*, this unilateral revocation of an established property right is an unreasonable violation of clearly established procedural due process protections to which qualified immunity does not apply.   There can be no doubt that a reasonable public official would be aware of these protections and the necessity of notice and a hearing related to the deprivation of a property right.[50]  For these reasons, Defendants Roussel and Donadieu may not claim the protection of qualified immunity.

The Court notes that at this time it makes no decision concerning precisely what process was due either before or after the SWO was issued.  *Mathews v. Eldridge* provides a three-factor balancing test for courts to consider in making such a determination:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest

---

[50]  Indeed, the Court notes that the Parish was aware of Petroplex's potential constitutional claims when it passed the Resolution, citing their potential viability as one of the rational for allowing the development to continue. Doc. 14-7 (Resolution 14-84) ("[T]he Parish Council concludes that this approval [of the tank farm] is justified as a matter of constitutional imperative or other vested legal right for the following reasons. . . .Whether the approval is 'required as a matter of constitutional imperative or other vested legal right superior to this ordinance' is unclear. However, the financial risk to the parish of a decision being wrong is high.").

> through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[51]

The Court does not find that stop work orders constitute a per se violation of procedural due process provisions. Indeed, due to the nature of stop work orders and the government interest involved, courts have found due process protections satisfied where a hearing was not held until after the issuance of a such an order.[52] Plaintiffs have alleged that they were never afforded process of any type either before or after the SWO was issued. This is sufficient to allege a violation of a clearly established constitutional right, and to preclude dismissal of the personal capacity claims against Roussel and Donadieu at this early stage of the proceedings.

## III. Redundancy of the Official Capacity Claims

Defendants further ask the Court to dismiss Plaintiff's claims against Parish Officials in their official capacities as redundant of the claims against the Parish itself. Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."[53] In other words, provided that the governmental entity receives notice and an opportunity

---

[51] *Meza v. Livingston,* 607 F.3d 392, 402 (5th Cir. 2010) (quoting *Mathews*, 424 U.S. at 338).

[52] *See, e.g., 3883 Connecticut, LLC v. District of Columbia*, 336 F.3d 1068, 1074 (D.C. Cir. 2003) (holding due process protections satisfied where regulations provided for expedited post-deprivation review of stop work orders).

[53] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).

to respond, an official-capacity suit "is, in all respects other than name, to be treated as a suit against the entity."[54] Plaintiffs' official-capacity claims must, therefore, be treated as claims against the Parish.  Plaintiffs argue that these claims should be maintained at this early stage of the case; however, they cannot demonstrate how these claims differ from the claims against the Parish itself. Because these claims are redundant and without legal significance, they are dismissed.[55]

### IV. Impact of Immunity on Potential State Law Claims

Defendants finally ask the Court to dismiss any state law claims against them in their individual capacities on the same immunity grounds discussed above. This request is rendered moot by Plaintiffs' Opposition, which acknowledges that the only claims that Plaintiffs seek against Defendants in their individual capacities are federal § 1983 claims.  Therefore, the Court need not consider this issue.

### CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss is GRANTED IN PART and DENIED IN PART. Plaintiffs' individual-capacity claims against Parish Council Members Alvin St. Pierre, Jason Amato, Terry McCreary, Ralph Patin, Charles Ketchens, Ken Brass, and James Brazen are DISMISSED. Plaintiffs' official-capacity claims against Parish President Timothy Roussel;

---

[54] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

[55] *See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001).

Parish Planning/Permitting Supervisor Ryan Donadieu; and Parish Council Members Alvin St. Pierre, Jason Amato, Terry McCreary, Ralph Patin, Charles Ketchens, Ken Brass, and James Brazen are likewise DISMISSED.

New Orleans, Louisiana, this 19th day of October, 2015.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**