UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PETROPLEX INTERNATIONAL, LLC, ET AL     CIVIL ACTION

VERSUS     NO:   15-140

ST. JAMES PARISH, ET AL     SECTION: "H" (4)

## ORDER

Before the Court is Defendants' **Motion for Sanctions (R. Doc. 127)** seeking an Order sanctioning Petroplex International, L.L.C., Mainline Energy Partners No. 2, L.L.C., and Homeplace Ventures No.2, L.L.C. ("Petroplex") for the alleged refusal and failure to produce a designated corporate representative to testify during the 30(b)(6) deposition. The motion is opposed. (*See* Rec. Doc. 131)

### I.  Background

Plaintiffs, Mainline Energy Partners No. 2, LLC ("Mainline") and Homeplace Ventures No.2, LLC ("Homeplace"), own adjoining tracts of land fronting the west bank of the Mississippi River in St. James Parish. Plaintiff Petroplex is the lessee of the property. This action arises from Defendants' alleged enactment, interpretation and enforcement of a Parish-wide land use ordinance that precludes Plaintiffs from building and operating a ten million barrel petroleum tank farm in the Parish. R. Doc. 1, p. 4. The facts of this case which are lengthy have been previously detailed in an earlier order. As such only the facts need for a speedy resolution of this motion will be included herein.

On January 22, 2016, St. James Parish filed the subject motion seeking sanctions against Petroplex for identifying Corne′ van de Reigjt, an employee of Verwarter as a Petroplex

corporate witness to testify during the January 12, 2015, corporate deposition.[1] (*See* Re-Notice of 30(b)6) Depositions – Petroplex International, Mainline Energy Partners and Homeplace, Rec. Doc. 127-14, Exhibit 9). Corne' resides in the Netherlands but worked under contract on the construction project in St. James which is the subject matter of this litigation.

Specifically, Petroplex on January 11, 2016, identified Corne' as its representative who would testify about Topic 5 which sought testimony from him regarding his role, responsibility and, actions in connection with the development of the Project and construction of the Facility.[2] (Rec. Doc. 127-14, Topic 5, Exhibit A).  He was also designated to testify about Topic 12 which sought testimony regarding Petroplex's response to the Stop Work Order issued on December 3, 2014. (Id., Topic 12) Corne' was also designated to testify about any written or oral communications between he or any other person or entity concerning the development, financing, or construction activities relating to the Project.  (Id., Topic 13)

Additionally, Corne′ was designated as a Petroplex corporate witness to testify about all the work Petroplex performed on the Project or Facitlity including work performed by any contractor or subcontractor. (Id. Topic 15) Finally, Corne' was designated as a Petroplex corporate witness to testify about the construction schedule for the Facility and details of any proposed phases.

Although Corne' was designated as Petroplex's corporate witness, Petroplex indicated that St. James Parish should contact Petroplex's lawyer to contact Corne' who was an employee of Verwater living in the Netherlands.  On January 5, 2016, Alysson Mills from Fishman Haygood sent an email to Ernie Geiger advising him that Corne′ would be included on

---

[1]Brent Barriere, counsel for Petroplex by letter dated January 11, 2016, indicated that Corne was designated to  testify about Topics 5,15, and 16 in the Petroplex Re-Notice of 30(b)6) deposition. (*See* correspondence from Barrierre, Fishman Haygood LLP, dated January 11, 2016 , Rec. Doc. 127-9).

[2] *See also* letter dated January 11, 2016 from Brent Barrierre, Fishman Haygood to Ernest Gieger, Jr, Geiger, Laborde, Exhibit 11).

Petroplex's witness list. (Rec. Doc. 127-3, Exhibit B)   On January 6, 2016 Petroplex forwarded by email its witness and exhibit lists which identified Corne' as one of its witnesses. (Rec. Doc. 127-4, Exhibit C)  Neither party filed their witness nor exhibit lists in the record of the Court except as appended to this motion.

On January 7, 2016, Tara Clement of Gieger Laborde forwarded via emails a series of Deposition notices, one of which was a deposition notice to Corne' van de Reijt.  This deposition appears to have been noticed as a fact witness deposition and was scheduled for January 22, 2016, at 10:00 a.m. (Rec. Doc. 127-6, Exhibit E) Later that same day, Alysson Mills of Fishman Haygood advised Tara Clement of Gieger Laborde that Corne' was in the Netherlands and that he was available for a telephone deposition at 9 a.m. central time on January 22, 2016. (Rec. Doc. 127-7, Exhibit F)

Two days before the scheduled Corne' deposition, Alysson Mills sent an email to the St. James litigation team advising them that Corne' was not available for trial. They provided no explanation but indicated that they intended to call a Verwater employee and indicated that they were trying to secure a witness and wanted to keep January 22, 2016, as the date to take the deposition.  Thereafter, Mills issued a deposition notice to Verwater for a 30(b)(6) Corporate deposition. (Rec.Doc. 127-11, Exhibit J)

That same afternoon, Rachel Forest of Gieger, Laborde forwarded electronically deposition exhibits which Petroplex had previously claimed were privileged. Presumably, these documents were sent in advance to be forwarded to Corne' even though they were apprised of the fact that he was no longer going to be a witness due to unavailability. (Rec. Doc. 127-10, Exhibit I)   Shortly after receiving the documents Mills emailed Gieger indicating that they had no control over Corne' and could not make him appear on Friday.

3

She further explained that Gieger always knew that they intended to call someone from Verwater and that because Corne' was now unavailable that they intended to call Herman Buisman (civil engineer) and possibly Gerko Kieviet (civil supervisor). They further advised that they were also considering calling Bengt Jarlsjo of Quanta as a witness. (Rec. Doc. 127-12, Exhibit K) Gieger responded that it was unacceptable that they would not produce Corne'. (Rec. Doc. 127-14, Exhibit 17)

Thereafter on January 22, 2016, despite receiving notice that Corne' was not available to testify as a witness, Gieger took a Proce' Verbal at his office and indicated that he learned the night before that Corne' would not be available to testify as a witness.[3] Gieger further stated that he was also not provided a telephone number or any other means of contacting Corne' prior to the date and time of the scheduled deposition. After making the record, the Proce' Verbal was concluded. (Rec. Doc. 127-13, Exhibit L, pages 1-16)

On January 25, 2016, Petroplex issued the 30(b)(6) notice of Verwater U.S.A. Projects, LLC, a Texas corporation, to take place in New Orleans on January 29, 2016, at 9:00 a.m., just four days later. The Defendants filed a Motion to Quash the deposition of Verwater U.S.A. Projects, L.L.C. which was granted by this court and is now the subject of an Appeal. In addition, a part of the motion to quash was the deposition of a Quanta employee which was voluntarily withdrawn by Petroplex. The hearing on the Preliminary Injunction is presently scheduled to begin on Monday, February 1, 2016, and will last for five days.

As a result of these developments St. James Parish now seeks sanctions against Petroplex for the last minute witness swap. Specifically St. James Parish seeks sanctions as follows:

---

[3] Petroplex contends that despite knowing that Corne' deposition was not going to take place, Mr. Giegher sent a court reporter to its counsel's office at which point the court reporter advised that there was not deposition. Thereafter, the court reporter returned to Gieger LaBorde's office where the Proce' Verbal took place. (Rec. Doc. 131, page 2)

4

1. Direct a finding that Petroplex did not commence work on the tank farm facility on or before July 31, 2014 as defined by Resolution 14-84.

2. Direct a finding that construction on the tank farm facility was not continuously pursued as defined by Resolution 14-84.    The motion is opposed.

3. Prohibit Petroplex from presenting evidence, whether testimonial or documentary, supporting the claim that construction began on or before July 31, 2014 or that it was continuous.

4. Prohibit Petroplex from opposing defendants claims that construction did not begin on or before July 31, 2014 as defined by Resolution 14-84;

5. Prohibit Corne' van de Reijt; Herman Businman, Gerko Kieviet, Bengt Jarlsjo or any representative of Verwater or Quanta from testifying at the upcoming hearing on the Preliminary Injunction.

## II.     Standard of Review

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Hebert v. Lando*, 441 U.S. 153, 176, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries*." Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." Coleman v. Amer. Red Cross, 23 F.3d 1091, 1096 (6th Cir. 1994).

Federal Rule of Civil Procedure 37 provides that a Court may award sanctions against a party who fails to comply with a discovery order, including ordering either the disobedient party, the attorney advising that party, or both, to pay reasonable expenses, including attorney's fees. The sanctions available under Rule 37(b) . . . are predicated upon the presence of such factors as willful disobedience, gross indifference to the right of the adverse party, deliberate callousness, or gross negligence. The sanctions are not predicated upon a party's failure to satisfy fully the requirements of a production order when the failure 'was due to inability fostered neither by its own conduct nor by circumstances within its control.' *Dorsey v. Acad. Moving & Sotrage, Inc.,* 423 F.2d 858, 860 (5th Cir. 1970) (citing *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 211 (1958)).

### III.  Analysis

St. James Parish complains that the last minute witness swap (the removal of Corne' as a witness and the attempt to add potentially three new witnesses) on the eve of trial is unfair because they were not previously disclosed.  They also complain that there was no reasonable opportunity to depose these witnesses and that Plaintiff's new found claim of no control over Corne' is contradicted by Petroplex's earlier representation that they would produce Corne' for the telephone deposition knowing that he was in the Netherlands.

In contrast, Petroplex acknowledges that it advised the Defendants that it intended to call Corne' as a witness because he played a significant role in the construction project as evident by more than 100,000 pages of documents they produced during discovery. Petroplex acknowledges that the work was performed at Corne's direction and pursuant to a master services agreement. (Rec. Doc. 131) However, it contends that sanctions are not warranted because it now may have

difficulty calling a witness to support its own case and this fact does not warrant the entry of a declaratory judgment as requested by the Parish.

St. James Parish relies upon *In re Classicstar Mare Lease Litigation¸* 2012 WL 1190888 (ED. Ky. Apr. 9, 2012) for the proposition that when a designated representative under Fed. R. Civ. P. 30(b)(6) fails to appear, the Court is authorized to impose sanctions on the corporate party, directing that certain facts be deemed established or prohibiting the party from presenting evidence or opposing certain claims. The court noted that by imposing certain types of sanctions, it can prevent frustration of the discovery process by giving the frustrated party or parties the benefit of an inference that the deposition would have yielded evidence favorable to its position – or at least unfavorable to the opponent. *See* Moore's Federal Practice- Civil Sec. 37.96 (2009).

In *In re Classicstar,* the facts indicate that the deposition was noticed and that the designated corporate representatives failed to appear for deposition and there was no advance notice nor explanation for the failure to appear.  No real explanation for the witnesses' failure to appear was provided to the Court and the Court knew only that they elected not to testify. *In re Classicstar¸* 2012 WL 1190888 at *2.

The Court noted that this fact was not disputed and the moving parties were prejudiced with respect to the preparation of their claims and defenses by their failure to offer the required testimony. The Court thereafter precluded the corporate defendants whose witnesses failed to appear from authenticating documents created by their agents, estopped them from introducing evidence that contradicted the factual assertions, and prevented them from disputing the fact that an agreement was entered into with one of the defendants. The two defendants were precluded from presenting contradictory evidence to the claims of the plaintiff. (*Id.*)

As an alternative, St. James Parish contends that an adverse inference should be given based upon the failure to produce Corne'.  In support of their position, it relies upon *Residential Funding Corp. v. DeGeorge Financial Corp.,* 306 F. 3d 99, 107 (2d Cir. 2002). *Residential Funding*, however, is a case in which the Court granted an adverse inference arising from the spoliation of evidence where the litigation was foreseeable.

In considering the issue, the Court first notes that *Residential Funding,* is not applicable to the facts of the case for two reasons; (1) there is no suggestion that evidence has been spoliated and (2) the hearing will be conducted by a trial judge and not a jury so consideration of an adverse inference would be inappropriate.

Regarding *In re Classicstar,* it is factually distinguishable.  In this case, albeit two days before the deposition, Petroplex notified St. James Parish that Corne' refused to testify as a witness in this matter.  In *In re* Classicstar, the facts suggest that it was not until the deposition that the other parties learned that the corporate witnesses were refusing to testify; the depositions had been ongoing for three days and the witnesses had engaged in similar conduct earlier. *In Classicstar¸* 2012 WL 1190888 at *1.

Although Petroplex identified Corne' as its corporate witness, St. James Parish knew that he was employed by Verwater and not Petroplex so at the outset he was not a proper witness to designate to testify and bind Petroplex. In reviewing the record, it appears that St. James Parish knew that Corne' was not an appropriate 30(b)(6) witness because they noticed the deposition of Corne' as a fact witness under Rule 30. (*See* Rec. Doc. 127-13, Exhibit 7)

Further, St. James Parish does not explain how their case is impacted negatively by Corne's non-cooperation. Instead, the inability of Petroplex to produce the person who was responsible for the day-to-day work at the construction site may hinder its ability to prove that it

8

was harmed by the Parish's Stop Work Order. The Court finds that the subject motion is a heavy-handed attempt to secure a dismissal without having the Preliminary Injunction hearing which is scheduled for Monday.

The evidence is also clear that Petroplex was seemingly blindsided by Corne' who they believed would willingly participate but because his employment status changed and he no longer works for Verwater but its competitor he decided not to cooperate. Corne' no longer wants to provide any testimonial assistance regarding the work he performed in St. James Parish for his former employer who Petroplex hired to manage the construction project.

Finally, the Court notes that according to FRCP 37 (b)(1), the basis for the mover's request for sanctions are only appropriate after there is a failure to comply with a court order. The Court has not received and nor has there been a request to compel Corne' to testify. Consequently, there is no such order and the subject request is inappropriate and premature.

### IV.   Conclusion

Accordingly,

**IT IS ORDERED** that the Defendants' **Motion for Sanctions (R. Doc. 127)** is **DENIED**.

New Orleans, Louisiana, this 29th day of January 2016.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

cc. Judge Jane Millazzo

9