UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| **PETROPLEX INTERNATIONAL ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO: 15-140** |
| **ST. JAMES PARISH ET AL** | **SECTION: "H"(4)** |


## ORDER AND REASONS

Before the Court is Plaintiffs' Motion for a Preliminary Injunction (Doc. 25). This matter came before the Court for evidentiary hearing on February 1, 2016. For the following reasons the Motion is **DENIED**.

## BACKGROUND

This case arises out of the development of a proposed tank farm in St. James Parish. Plaintiffs Mainline Energy Partners No. 2, LLC ("Mainline") and Homeplace Ventures No. 2 LLC ("Homeplace") own adjoining tracts of land

1

fronting the west bank of the Mississippi River in St. James Parish (the "Petroplex Property"). The property was leased to Plaintiff Petroplex International, LLC ("Petroplex").[1] Plaintiffs have pursued the tank farm project since they purchased the tract of land in 2007. In 2008, Plaintiffs applied for and received permits from the Louisiana Department of Environmental Quality. In 2011, Plaintiffs' received a loan of approximately $20,000,000 to develop the facility. On April 2, 2014, while Plaintiffs were entering the final phases of planning, the Parish Council adopted Ordinance 14-03 to serve as a Master Land Use Plan for the Parish (the "Land Use Ordinance"). Under the Land Use Ordinance, the tank farm was not a permissible use of the Petroplex Property. Plaintiffs thereafter applied to the Council for approval of the use of the Petroplex Property as a tank farm. At its May 7, 2014 meeting the Council adopted St. James Parish Resolution 14-84 (the "Resolution"), which, subject to certain conditions, approved Petroplex's use of the property as a tank farm. The Resolution required, inter alia, that Petroplex begin construction at the site no later than July 31, 2014.[2]

Plaintiffs contend that, in reliance on the resolution, they began construction on the facility prior to July 31, 2014. Defendants dispute this assertion, arguing instead that Plaintiffs were merely moving dirt around on

---

[1] Mainline and Homeplace are the sole members of Petroplex.
[2] The Resolution defines "construction" as "permanent on-site fabrication, erection, or installation of a permitted facility (such as pile driving, installing structural supports and foundations, laying underground pipework, or construction permanent storage structures) that is continuously pursued with reasonable diligence to complete the permitted facility within a reasonable time frame."

the property to appear as though construction had commenced. Eventually the Council requested that Petroplex provide information on the status of construction, which it did at the November 5, 2014 Council meeting. At that time, representatives from project investors provided an update on the project. At the end of this meeting, Parish Attorney Victor Frankiewicz advised the Council that, in his opinion, Plaintiffs were not in compliance with the Resolution and that they had failed to acquire a required building permit from the Parish. The Parish Council did not take any action at this meeting, and urged Petroplex to proceed with construction without delay. Petroplex represented that it would have "steal on the ground" by January. On December 3, 2014 the Parish, acting through Parish President Timothy Roussel and Permitting/Planning Supervisor Ryan Donadieu, issued a Stop Work Order.

Following the issuance of the Stop Work Order, Plaintiffs met with parish officials on December 4, 2014, and provided additional information regarding their purported compliance with the terms of the Resolution. On December 8, 2014, Parish council advised that the Parish would not withdraw the Stop Work Order. Plaintiffs then contacted Roussel and the Council and requested a hearing before the Council and a new resolution authorizing Petroplex to proceed with construction. Plaintiffs allege that, though they were allowed to make a presentation at the January 7, 2015 Council meeting, they were never afforded a hearing and the Stop Work Order remains in place to this day.

Plaintiffs then filed the instant lawsuit and moved for a preliminary injunction. In this Motion, Plaintiffs request a preliminary injunction precluding the Parish from enforcing the Land Use Ordinance, the Resolution, and the Stop Work Order. Plaintiffs' suit challenges the Land Use Ordinance on the basis that it is unduly vague and arbitrary and capricious in violation of substantive due process protections. Plaintiffs also allege that the Stop Work Order was issued without notice and a hearing, in violation of procedural due process protections. Plaintiffs' arguments regarding the Land Use Ordinance and the Resolution were rendered moot by the Court's ruling granting summary judgment to Defendants on Plaintiffs' claims regarding this issue. Accordingly, the Court need only consider Plaintiffs' due process claims stemming from the issuance of the Stop Work Order. Defendants respond, opposing the Motion for a Preliminary Injunction.

## LEGAL STANDARD

An applicant for preliminary injunctive relief must show: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable harm if the injunction is not granted; (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin; and (4) granting the preliminary injunction will not disserve the public interest.[3] A preliminary injunction is an extraordinary remedy.[4]

---

[3] *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195–96 (5th Cir. 2003).
[4] *Miss. Power & Light Co. v. United Gas Pipe Line*, Co., 760 F.2d 618, 621 (5th Cir. 1985).

Accordingly, a preliminary injunction which should only be granted when the party seeking it has clearly carried the burden of persuasion on all four requirements.[5] In the end, a preliminary injunction is treated as an exception rather than the rule.[6]

## LAW AND ANALYSIS

The Court finds that Plaintiffs have not prevailed on any of the four requirements needed for the issuance of a preliminary injunction.  This Order will address each in turn.

### I. Plaintiffs are Unlikely to Prevail on the Merits

Plaintiffs contend that they are likely to prevail on the merits of their claims.  As the Court has already resolved Plaintiffs' substantive due process claims regarding the constitutionality of the Land Use Ordinance, it need only focus on the due process claims stemming from the issuance of the Stop Work Order and the propriety of whatever process, if any, was afforded Plaintiffs.  There are three interrelated issues in this analysis: First, whether the Plaintiffs had a constitutionally protected property interest in proceeding with construction of the tank farm; second, whether they were afforded sufficient process before being deprived of this property interest; and third, whether the Stop Work Order violates substantive due process protections.  The Court will address each in turn.

---

[5] *Id.*
[6] *St. of Tex. v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975).

### A. Whether Plaintiffs Have a Property Interest in the Resolution

Plaintiffs argue that they have a constitutionally protected property interest to proceed with construction on the tank farm facility. To prevail on a due process claim, a Plaintiff must first establish that he has a property right to which due process protections apply.[7] "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."[8] Property interests are not created by the constitution, "[r]ather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."[9] As a legal matter, a permit, once issued, may constitute a sufficient property interest to invoke due process protections.[10] This is especially the case where a plaintiff has expended large amounts of money in reliance on the permit.[11] Moreover, the holder of a permit has a property right where an official's discretion to terminate or suspend work allowed by the permit is substantially limited.[12]

---

[7] *Blackburn v. City of Marshall*, 42 F.3d 925, 936 (5th Cir. 1995).
[8] *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).
[9] *Id.* at 577.
[10] *See Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 220 (5th Cir. 2012).
[11] *St. Raymond v. City of New Orleans*, 769 So. 2d 562, 564 (La. App. 4 Cir. 2000).
[12] *3883 Connecticut LLC v. District of Columbia*, 336 F.3d 1068, 1072 (D.C. Cir. 2003).

6

In reviewing the Resolution and the evidence introduced at the hearing, the Court concludes that the Resolution conferred a property right on Plaintiffs to construct the tank farm as outlined therein. On its face the Resolution provides Petroplex with approval to construct the tank farm. The Parish's ability to rescind this approval was limited. Based on the evidence introduced at the hearing, it is clear that the Parish led Plaintiffs to believe that they could start construction with no further permitting. Indeed, Plaintiffs were not told that they needed further permits until November, despite the fact that the Parish was continually monitoring activity at the site. The Parish argues that the Resolution's conditional approval terminated automatically because the terms of the Resolution were not met. Due process protections require, however, that a hearing be held to make such a determination.

### B. Procedural Due Process

Having found that Plaintiffs' had a property right in the Resolution, the Court turns to the question of whether they were deprived of this right without notice and a hearing in violation of procedural due process protections. Plaintiffs claim that their procedural due process rights were violated by the summary issuance of a stop work order without notice or a hearing. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner" before final deprivation of a constitutionally protected property interest.[13] The Court must weight three factors in determining what process is due: "[f]irst, the private interest that

---

[13] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[14]

Plaintiffs contend that they were afforded no process associated with the issuance of the Stop Work Order. Defendants dispute this assertion, arguing that the Parish in fact provided sufficient process as requested by Plaintiffs. Defendants argue that Plaintiff's simply failed to take advantage of post-issuance protections that were available to them.[15] They further argue that the Parish administration received and considered Petroplex's evidence of compliance with the resolution and considered its request for a new construction deadline.

The Court need not resolve the issue of whether Plaintiffs were afforded adequate process at this juncture because it finds that, even if Plaintiffs had been afforded process, they are unlikely to prevail on the merits of their procedural due process claims. Plaintiffs were not in compliance with the terms of the Resolution, nor were they in a position to timely correct any deficiencies. The remedy for a procedural due process violation is determined

---

[14] *Id.* at 335.
[15] Defendants specifically point to St. James Parish Ordinance Section 18-12, which allows for an appeal process of a determination made by the building official.

by the injury resulting from the denial of constitutionally required process.[16] Accordingly, if Plaintiffs were neither in compliance with the Resolution nor in a position to cure their noncompliance, they are not entitled to injunctive relief allowing them to proceed with construction.[17]

The Resolution defines "construction" as "permanent on-site fabrication, erection, or installation of a permitted facility (such as pile driving, installing structural supports and foundations, laying underground pipework, or construction permanent storage structures) that is continuously pursued with reasonable diligence to complete the permitted facility within a reasonable time frame." Plaintiffs allege that they timely began "dirt work" at the site when a bulldozer was delivered on July 30, 2014. The Court finds, however, that the "work" being done with this bulldozer was not permanent construction as defined by the Resolution, and that Plaintiffs were not prepared to commence meaningful construction at the site by the July 31 deadline or at any time thereafter. Indeed, the Court finds that, despite their assertions at the November council meeting, Plaintiffs were in no position to have "steel on the ground" in January of 2015. Even if the Court considers the Parish Council's actions at the November Council meeting to constitute a tacit acknowledgement that it would consider "steel on the ground" in January 2015 as "compliance" with the Resolution, Petroplex would still have been unable to timely comply. Specifically, Plaintiffs did not have final architectural plans or

---

[16] *Carey v. Piphus*, 435 U.S. 247, 263 (1978).
[17] *See Hopkins v. Saunders*, 199 F.3d 968, 979 (8th Cir. 1999).

construction documents to support their construction activity. The drawings submitted to the Parish were identified on their faces to be preliminary, and they did not bear the stamp of a licensed design professional. Of particular significance, the geotechnical report issued by Eustis Engineering was preliminary, and specifically notes that further analysis would be required before construction began. Such follow-up analysis was, however, never conducted. Furthermore, the work being done was off the footprint as permitted by the LADEQ. No geotechnical engineers were on site to monitor the putative preloading activities. No Louisiana licensed contractor was working the project until October of 2014, and at that time was only supervising the dirt movement. Accordingly, the Court finds based on the evidence introduced at the hearing that Plaintiffs failed to timely commence construction on July 31, 2014, as required by the Resolution, and that they were unable to remedy any deficiencies within any reasonable time frame. At no time before or since the July 31 deadline or the issuance of the Stop Work Order have Plaintiffs been prepared to immediately commence construction, despite their multiple assertions to the contrary. Accordingly, injunctive relief is precluded.

### C. Substantive Due Process

Assuming that they had a property interest in developing the tank farm facility, Plaintiffs aver that the issuance of the Stop Work Order was arbitrary and capricious in violation of substantive due process protections. To prevail on a substantive due process claim, a plaintiff must show both that they had a

constitutionally protected property right to which due process protection applied and that the right was infringed upon by government action that was not rationally related to a legitimate government interest.[18] Defendants contend that the issuance of the Stop Work Order was far from arbitrary and capricious, but rather was warranted by Plaintiffs' deceitful activities on the property aimed at feigning construction. Having determined that Plaintiffs did not commence work as required by the Resolution, this Court agrees. Defendants issuance of a Stop Work Order was rationally related to a legitimate government interest—namely, halting construction that was not permitted by the Resolution. Accordingly, Plaintiffs are unlikely to prevail on the merits of their substantive due process claims.

## II. Plaintiffs Have Not Shown Irreparable Injury

In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages.[19] Plaintiffs rely on an isolated quote from a Northern District of Mississippi case in arguing that violations of constitutional rights constitutes irreparable harm as a matter of law.[20] They do not cite to any binding precedent in support of this broad rule. Other circuits have noted that such a rule is confined only to First Amendment and Fourth Amendment right to privacy jurisprudence.[21] Accordingly, the Court

---

[18] *Energy Mgmt. Corp v. City of Shreveport*, 467 F.3d 471, 481 (5th Cir. 2006).
[19] *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011).
[20] *Cohen v. Coahoma County, Miss.*, 805 F. Supp. 398, 406 (N.D. Miss. 1992).
[21] *Ne. Florida Chapter of Ass'n of Gen. Contractors of Am. V. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990).

11

will not apply such a far-reaching rule here. Defendants argue that the harms claimed by Plaintiffs are economic in nature and could be fully compensated with a money judgment. This Court agrees. Plaintiffs' alleged harms include lost investors, inability to repay loans, and loss of their property through foreclosure. These harms are all economic in nature and would be properly compensable with monetary damages. Accordingly, a preliminary injunction is not appropriate.

### III. Threatened Injury Does Not Outweigh the Threatened Harm to the Party Enjoined and Granting the Injunction Would Disserve the Public Interest

Plaintiffs claim Defendants can show no meaningful harm arising from the inability to enforce the Stop Work Order. The Court disagrees. Should the Parish be enjoined from enforcing the Stop Work Order, Plaintiffs would be allowed to begin construction without a final determination on the merits. If the Parish ultimately prevails in this matter, construction would halt and the Parish would be saddled with an incomplete industrial facility. A large swath of undeveloped land would be taken out of commerce. Additionally, enjoining the Parish in this fashion would undercut its ability to apply and enforce its own land use laws. The public interest would be disserved by an injunction for many of the same reasons, as such a situation would result in a major disruption in the community. Accordingly, the Court finds that the threatened harm to the party enjoined would be great and that an injunction would disserve the public interest.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for a Preliminary Injunction is **DENIED**.

New Orleans, Louisiana this 5th day of May, 2016.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**